**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON COBB, | |
| Plaintiff, | No. C 13-04917 JSW |
| v. | **ORDER GRANTING MOTIONS TO DISMISS AND CONTINUING CASE MANAGEMENT CONFERENCE** |
| DON ADAMS, et al.,, | |
| Defendants. | |
| | **(Docket Nos. 10, 28, 35, 51)** |

This matter comes before the Court for consideration of the motions to dismiss filed by Defendants: (1) Don Adams ("D. Adams"), Joel Adams ("J. Adams"), Allen Shuster ("Shuster"), Christian Congregation of Jehovah's Witnesses, Inc., Kingdom Support Services, Inc., Regional Building Committee of Jehovah's Witnesses, Inc., Religious Order of Jehovah's Witnesses, Inc., Watchtower Bible and Tract Society of Pennsylvania, Inc., and the English Congregation of Jehovah's Witnesses, Menlo Park, California, Inc. (collectively the "RICO Defendants"); (2) the City of Menlo Park ("Menlo Park"), William Anthony Dixon ("Dixon"), and Victoria Trask ("Trask") (collectively the "Menlo Park Defendants"); the County of Santa Clara ("Santa Clara County") and Daniel Kassabian ("Kassabian")[1] (collectively the "Santa Clara County Defendants"); and the County of San Mateo ("San Mateo County").

---

[1] Kassabian is also identified as a "RICO Defendant." (Docket No. 1, Compl. ¶ 35.)

The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it HEREBY GRANTS the motions to dismiss, and it GRANTS Plaintiff, Jason Cobb ("Cobb"), leave to amend on the limited terms set forth herein.[2]

**BACKGROUND**

This case is the latest in a series of cases filed by Cobb. The Court has recounted many of the facts that give rise to this dispute in its orders dismissing related cases, and the Court shall not repeat them in detail in this Order. *See Cobb v. JPMorgan Chase Bank, N.A.*, 12-cv-1372-JSW, 2012 WL 5335309, at *1-*2 (N.D. Cal. Oct. 26, 2012) ("*JPMorgan Chase I*"); *Cobb v. JPMorgan Chase Bank, N.A.,* 13-cv-1955-JSW, 2013 WL 62014114, at *1-*3 (N.D. Cal. Nov. 27, 2013) ("*JPMorgan Chase II*").

In brief, Cobb alleges that D. Adams, J. Adams and Shuster are the ringleaders of a RICO Enterprise that has developed a scheme to assume control over the property and assets of varied congregations of Jehovah's Witnesses, including Cobb's former congregation. (Compl. ¶¶ 11-24, 72-76.) According to Cobb, each of the Defendants has engaged in a campaign of harassment designed to undermine his efforts to bring these alleged wrongs to light. For example, Cobb alleges that one of the Adams financed a bribe to Menlo Park police officers to preclude them from investigating Cobb's claims. (*Id.* ¶¶ 99, 103.) Cobb also alleges that the Defendants engaged in conduct designed to pressure Cobb to drop various lawsuits, including *JPMorgan Chase I* and *JPMorgan Chase II*. (Compl. ¶¶ 29, 35, 76-99, 103-112, 129-130.)

Cobb also alleges that the RICO Defendants directed his former wife to falsely accuse Cobb of battery. As a result of these allegations, Santa Clara County instituted criminal charges against Cobb, and Kassabian prosecuted that case. (*Id.* ¶¶ 113-118.) Many of Cobb's allegations in this most recent case stem from his claims that the Defendants suborned perjury and tampered with witnesses and evidence during that prosecution. (*Id.* ¶¶ 119-121.) Cobb also

---

[2] Cobb objects to the reply briefs filed by the Menlo Park Defendants and the Santa Clara County Defendants on the basis that they are untimely. The Court overrules these objections. Based on its review of the docket, Cobb's opposition to the Menlo Park Defendants' motion also was not filed within the time required by the Local Rules. In addition, the motions were fully briefed well in advance of the hearing date, and Cobb has not demonstrated that he would be prejudiced if the Court considers the untimely briefs.

2

alleges that a restraining order was issued against him in San Mateo County. According to Cobb, in March 2013, his ex-wife filed a false report with the Menlo Park Police Department, in which she accused him of violating the restraining order. Cobb alleges that the decision to file charges against him without conducting a thorough investigation "are byproducts of the standing conspiratorial alliance...." (*Id.* ¶¶ 122-128.)

Based on these and other allegations, which the Court shall address as necessary, Cobb asserts claims pursuant to: 42 U.S.C. section 1983 (the "Section 1983 Claim"); 42 U.S.C. section 1985 (the "Section 1985 Claim"); 42 U.S.C. section 1986 (the "Section 1986 Claim"); California Civil Code section 52.1 (the "Bane Act Claim"); 18 U.S.C. section 1962(c) ("the Civil RICO Claim"); 18 U.S.C. section 1962(d) (the "RICO Conspiracy Claim"); and for civil conspiracy.

**ANALYSIS**

**A.     Applicable Legal Standards.**

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). Cobb is proceeding pro se, and the Court must construe pro se filings liberally. *Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility

3

standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.... When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

**B.    The Court Dismisses the Section 1983 Claim.**

Cobb's first claim for relief consists of three counts of alleged violations of Section 1983 against: Dixon (Count One); Trask (Count Two); and Kassabian (Count Three). In order to state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Ketchum v. Alameda County*, 811 F.2d 1243, 1245 (9th Cir. 1987).

  **1.    Count One.**

Cobb alleges that Dixon "deprived [him] of his Constitutional right to equal protection under law by agreeing to obstruct the investigation for Menlo Park PD case 11-973," which related to Cobb's allegations of fraud and embezzlement by Ernest Brede and others in the alleged RICO Enterprise. (Compl. ¶¶ 87, 90-93, 95-98, 133-134, Exs. 3-4.) Dixon moves to dismiss this claim on the basis that it is barred by the statute of limitations and, in the alternative, that Cobb fails to allege facts showing that Dixon violated his constitutional rights.

A claim under Section 1983 must be brought within two years after the cause of action accrued, *i.e.* when Cobb knew or had reason to know of the alleged injury that forms the basis of this claim. *See Canatella v. Van De Kamp*, 486 F.3d 1128, 1132-33 (9th Cir. 2007). Cobb attaches a letter from Dixon, dated July 5, 2011, in which Dixon advised Cobb that the investigation had been suspended until Cobb could provide certain materials. (*Id.*, Ex. 4.) It is undisputed that Cobb filed this Complaint on October 23, 2013. Dixon argues that Cobb's

4

1  Section 1983 Claim accrued on July 5, 2011.  Cobb argues that he has alleged a continuing
2  course of conduct, including an update from Dixon in February 2013.  (*See, e.g.,* Compl. ¶ 95.)
3  Based on the face of the Complaint, Cobb knew or should have known of the basis for
4  the alleged injury as of July 5, 2011, when he received Dixon's letter.  Indeed, Cobb has relied
5  on these same facts to assert claims against other defendants in the related cases.  The
6  allegations set forth in paragraphs 95 through 97 do not alter the Court's conclusion, because
7  they merely confirm what Cobb had already been told, namely that the Menlo Park Police
8  Department had suspended the investigation.  Accordingly, the Court concludes that Cobb's
9  Section 1983 claim against Dixon is barred by the statute of limitations.
10  However, even if the Section 1983 Claim against Dixon was timely, the Court would
11  still grant Dixon's motion to dismiss.  In general, in order to state an equal protection violation,
12  a plaintiff must allege (1) discrimination on account of his or her membership in a distinct
13  group or class (2) by the State.  *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591,
14  607 (2008).  The plaintiff also must allege that the state actor acted with an intent or purpose to
15  discriminate against him based upon his membership in a protected class.  *See Lee v. City of Los*
16  *Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), *overruled on other grounds, Galbraith v. County of*
17  *Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002).
18  Cobb has not alleged that he is a member of any distinct group or class.  Rather, he
19  alleges that he is a "class of one."  (Compl. ¶ 134 (citing *Village of Willowbrook v. Olech*, 528
20  U.S. 562, 564 (2000).)  In such a case, a plaintiff must allege that a defendant "intentionally,
21  and without rational basis, treated the plaintiff differently from others similarly situated" and
22  must also allege facts to show that the discriminatory treatment was "intentionally directed just
23  at him, as opposed ... to being an accident or a random act."  *North Pacifica LLC v. City of*
24  *Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (citations and internal quotations omitted).  Cobb's
25  allegations of intentional discrimination are either speculative or bare legal conclusions couched
26  as fact.  Thus, they are insufficient to state a claim for a violation of equal protection.  As this
27  Court has stated in prior orders, it is equally plausible to infer that Dixon and other members of
28  the Menlo Park Police Department determined that an investigation was not warranted.  *See*

*Iqbal*, 556 U.S. at 678.  The Court concludes that Cobb has not alleged facts which would move Count One "across the line from conceivable to plausible....".  *Twombly*, 550 U.S. at 570.[3]

### 2. Count Two.

Cobb alleges that Trask violated his constitutional rights to due process and equal protection, because she failed to failed to obtain a statement from him as part of the investigation into his ex-wife's allegations that he violated the restraining order and that Trask manufactured a basis to arrest him for failing to appear for a hearing.  Cobb also alleges that Trask did so to retaliate against him for filing *JPMorgan Chase II*.  (Compl. ¶¶ 123, 138-139.)  Trask moves to dismiss on the basis that Cobb fails to allege facts to state a claim.[4]

Cobb also relies on a "class of one" theory to support his equal protection claim against Trask, and he also fails to allege facts showing he is a member of a protected class.  For the reasons set forth above regarding Count One, the Court grants the motion to dismiss the equal protection claim against Trask.[5]

Cobb also alleges that Trask violated his due process rights.  Procedural due process provides "a guarantee of fair procedure in connection with any deprivation of life, liberty, or property" by the government.  *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

---

[3]  Cobb also names retired Menlo Park Police Officer Jeff Keegan ("Keegan") as a defendant in Count One.  Keegan has not been served, and he has not appeared in this action. However, the Menlo Park Defendants ask the Court to dismiss the claim against Keegan on its own motion. (Docket No. 28, Menlo Park Def. Mot. to Dismiss at 2 n.1.) Because Keegan is in a position similar to that of Dixon *and* because the claim against Keegan and Dixon are integrally related, the Court dismisses the claim against Keegan as well.  *See, e.g., Abagninin v. AMVAC Chemical Corp.*, 545 F.3d 733, 742-43 (9th Cir. 2008) (citing *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981)).

[4]  Various defendants, including Trask, have moved to dismiss Cobb's claims on the basis that they are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Cobb alleges that Kassabian prosecuted criminal case "B1262610," against him.  He also references proceedings in San Mateo County regarding alleged violations of a restraining order. (Compl. ¶¶ 114, 118-119, 122-123.) On April 17, 2014, Cobb submitted a "Notice of Disposition of Criminal Case SM386723," which refers to proceedings in San Mateo County, but it is not clear if that case pertains to the violation of the restraining order. (Docket No. 79.) Because the record is unclear about which, if any, of the criminal cases remain pending, the Court does not reach this alternative argument in favor of dismissal.

[5]  Cobb asserts that Trask failed to interview him because she was retaliating against him for filing *JPMorgan Chase II*.  However, Trask's conduct took place *before* Cobb filed suit and does not plausibly state a claim for relief on this theory.

6

Cobb contends that Trask violated his right to due procees, because she failed to interview him as part of the investigation into his ex-wife's allegations. In the absence of any authority to show that the process that Cobb received post-arrest was inadequate, the Court concludes he fails to state a claim based on these facts. Cobb also alleges that Trask she did not provide him notice of a hearing date. Again in the absence of any authority that Trask was required to provide him notice of this date, the Court concludes he has failed to allege facts showing that Trask violated his due process rights.

In his opposition brief, Cobb also suggests that Trask lacked probable cause to arrest him. (Docket No. 39, Opp. Br. at 9:9-14.) Cobb does not include any facts to support this theory in his Complaint, but the Court shall consider whether he should be given leave to amend to assert a claim against Trask based on that allegation.

### 3. Count Three.

Cobb alleges that Kassabian violated his due process and equal protection rights.[6] Kassabian moves to dismiss this claim on the basis that he is absolutely immune from suit. Absolute or "quasi-judicial" immunity protects a prosecutor from civil, monetary liability for injuries that arise out of the prosecutor's execution of duties that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). The immunity is quasi-judicial because it protects prosecutors when they make discretionary judgments, similar to those made by a judge, on the basis of evidence presented to them. *Id.* at 423 n. 20.

Prosecutors who seek absolute immunity bear the burden of proof, and they enjoy a presumption of qualified rather than absolute immunity. *Buckley v. Fitzsimmons,* 509 U.S. 259, 268-69 (1993); *Imbler*, 424 U.S. at 430. Absolute immunity only applies to a prosecutor's "special functions," *i.e.* those functions closely associated with the prosecutor's duties as an

---

[6] Cobb also alleges that Kassabian retaliated against Cobb for naming the Santa Clara County District Attorney's Office as a defendant in *JPMorgan Chase II*. However, the conduct that supports the claim against Kassabian all occurred in 2012, well before Cobb filed *JPMorgan Chase II*. (Compl. ¶¶ 118-122.) As with Trask, Cobb fails to allege facts that support a plausible claim for relief on this theory.

7

advocate for the State. *Id.* The inquiry into which functions are prosecutorial, and thus immune, focuses on the nature of the function performed rather than the identity of the actor who performed it. *Buckley*, 509 U.S. at 269. A court also should not give any weight to prosecutorial intent in the immunity inquiry. *Ashelman*, 793 F.2d at 1078. The issue is not the harm that the conduct may have caused, but the nature of the conduct for which immunity is claimed. *Buckley*, 509 U.S. at 271. So long as the prosecutor is acting in his role as an advocate for the State, his actions are protected, even if his actions are malicious or dishonest. *Imbler*, 424 U.S. at 428. In contrast, a prosecutor is only entitled to qualified immunity "if he or she is performing investigatory or administrative functions , or is essentially functioning as a police officer or detective." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

A prosecutor's immunized duties will involve actions preliminary to the initiation of a prosecution and acts apart from the courtroom. *Imbler*, 424 U.S. at 431 n. 33. Cobb alleges that Kassabian prosecuted him in "case B1262610" and relied on false testimony and evidence during the trial. (Compl. ¶¶ 118-121.) It is well-established that a prosecutor is absolutely immune for initiating a prosecution and presenting the State's case and when deciding whether or not to prosecute a case. *Id*, 424 U.S. at 431 (initiation and presentation of case); *Roe v. City and County of San Francisco*, 109 F.3d 578, 583 (9th Cir. 1997) (decision to prosecute). In addition, a prosecutor is absolutely immune from suit for knowingly using false testimony during trial. *Broam*, 320 F.3d at 1030. Based on the allegations in the Complaint, Kassabian is entitled to absolute immunity.

For all of the reasons set forth above, the Court GRANTS the motions to dismiss the Section 1983 Claim.

**C.    The Court Dismisses the Section 1985 Claim.**

Cobb's second claim for relief consists of three counts of violations of Section 1985 against the RICO Defendants, Dixon, Keegan, Trask, and Kassabian.[7] Each of these counts are

---

[7] Cobb does not state which subsection of Section 1985 he alleges the Defendants violated. Based on the facts set forth in the Complaint, he appears to proceed under Section 1985(3).

8

1  premised on the actions that form the basis of Counts One through Three of the Section 1983
2  Claim.  (*See* Compl. ¶¶ 146-158.)

3  In order to state a claim under Section 1985(3), "a plaintiff must show, *inter alia,* (1)
4  that some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay]
5  behind the conspirators' action, ... and (2) that the conspiracy aimed at interfering with rights
6  that are protected against private, as well as official, encroachment." *Butler v. Elle*, 281 F.3d
7  1014, 1028 (9th Cir. 2002) (internal quotations omitted, citing *Bray v. Alexandria Women's
8  Health Clinic,* 506 U.S. 263, 267–68 (1993)); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102
9  (1971) (plaintiff must allege "some racial or perhaps otherwise class-based, invidiously
10 discriminatory animus behind the conspirator's action").

11 As discussed above, Cobb alleges that he is a class of one, and he has not alleged that he
12 is a member of a class that requires special federal assistance in protecting its rights.  Rather, his
13 allegations are premised on the RICO Defendants' feelings of personal malice toward him.  The
14 Court concludes that Cobb fails to state a claim under Section 1985(3).  *See Trerice v.
15 Pederson*, 769 F.3d 1398, 1402-1403 (9th Cir. 1985); *see also Butler*, 281 F.3d at 1028 (noting
16 that Supreme Court jurisprudence requires "lower courts to exercise restraint in extending
17 [section] 1985(3) beyond racial prejudice").

18 Accordingly, the Court GRANTS the motions to dismiss the Section 1985 Claim.

19 **D.     The Court Dismisses the Section 1986 Claim.**

20 Cobb's third claim for relief consists of two counts of violations of Section 1986 against
21 the RICO Defendants, which are premised on Counts Two and Three of the Section 1985
22 Claim.  (Compl. ¶¶ 159-168.)  If a plaintiff fails to state a claim for relief under Section 1985, a
23 claim under Section 1986 also fails.  *See Trerice*, 769 F.2d at 1403; *Dooley v. Reiss*, 736 F.2d
24 1392, 1396 (9th Cir. 1984).  Because Cobb fails to allege a claim under Section 1985, he fails to
25 state a claim under Section 1986.

26 Accordingly, the Court GRANTS the RICO Defendants' motion to dismiss the Section
27 1986 Claim.

28 //

9

**E.     The Court Dismisses the Bane Act Claim.**

In his fourth claim for relief, Cobb alleges that the RICO Defendants violated the Bane Act, which provides, in pertinent part:

> [a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured.

Cal. Civ. Code § 52.1(b).

The California Supreme Court has explained that this section provides a remedy for "certain misconduct that interferes with" the exercise of rights under federal or state laws, if that misconduct is accompanied by threats, intimidation or coercion. *Austin B. v. Escondido School Dist.*, 149 Cal. App. 4th 860, 882 (2007); *see also Jones v. Kmart Corp.*, 17 Cal. 4th 329, 338 (1998). Like Section 1983, the Bane Act "does not provide any substantive protections; instead, it enables individuals to sue for damages for constitutional violations." *Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996), *overruled on other grounds by Acri v. Varian Associates*, 114 F.3d 999, 1000 (9th Cir. 1997). A plaintiff may assert a Bane Act claim against private individuals as well as state actors. *Jones*, 17 Cal. 4th at 334-35. However, the Bane Act "does require an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Id.*

Cobb alleges that the RICO Defendants attempted to interfere with his "Fourteenth Amendment rights as well as his First Amendment right to petition...." (Compl. ¶ 170.) Cobb fails to allege facts showing that the RICO Defendants actually interfered with his ability to petition the courts for redress. Therefore, he has not alleged facts that would support a constitutional violation, and he fails to state a claim under the Bane Act.

Accordingly, the Court GRANTS the RICO Defendants' motion to dismiss this claim.

**F.     The Court Dismisses Cobb's Fifth Claim for Relief.**

Cobb's fifth claim for relief consists of four counts of alleged violations of California Civil Code sections 2338 and 3294 against: the RICO Defendants (Count One); Menlo Park

10

(Count Two); San Mateo County (Count Three); and Santa Clara County (Count Four). Section 3294 addresses the standards applicable to punitive damages as a remedy, and it does not provide for a private right of action. Accordingly, to the extent Cobb attempts to assert a claim based on Section 3294, rather than seeking the remedy of punitive damages, the Court grants the motions to dismiss.

Section 2338 sets forth the principle of *respondeat superior,* and it also does not provide for a private right of action. The Court dismisses this claim for that reason. Because the Court must liberally construe Cobb's Complaint, and because it is clear that Cobb seeks to hold these Defendants liable under the principle of *respondeat superior* for conduct alleged in the Section 1983 Claim, the Court shall evaluate whether he has alleged a Section 1983 Claim against the RICO Defendants, Menlo Park, San Mateo County and Santa Clara County. (*See* Compl. ¶¶ 178-180, 184-186.) The Court concludes Cobb fails to state a claim against these Defendants.

Municipal liability can be imposed only for injuries inflicted pursuant to an official governmental policy or custom. *See Monell v. N.Y. Dept. of Soc. Serv.*, 436 U.S. 658, 690-94 (1978). A county can be found liable when the execution of a county policy, whether made by its lawmakers or those whose acts can be said to represent official policy or custom of the county, inflicts the injury. *Id.* at 694. While a single decision may satisfy *Monell*'s municipal policy requirement, that decision must have been made by one of the municipality's authorized decisionmakers, *i.e.* by an official who "possesses final authority to establish municipal policy with respect to the challenged action." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-81 (1986).

To hold a local government liable for an official's conduct, a plaintiff must first establish that the official (1) had final policymaking authority concerning the action alleged to have caused the particular constitutional or statutory violation at issue and (2) was the policymaker for the local governing body for purposes of the particular act. *McMillian v. Monroe County Alabama*, 520 U.S. 781, 785 (1997). The Supreme Court instructed courts to look to state law to determine whether an official is the policymaker for the local government or the state for purposes of a particular act. *Id.* at 786. Applying that test, the Ninth Circuit has

11

held that in California, a district attorney acts as a state official, and not a county official, when he or she decides to proceed with a criminal prosecution. *Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir. 2000).

To the extent Cobb seeks to hold Santa Clara County and San Mateo County liable for the conduct alleged in the first claim for relief, the claim would fail. The State, was the actor, not the Counties. *See id.* at 1031. To the extent Cobb seeks to hold Menlo Park liable, Cobb has not alleged any facts to show that Dixon or Trask acted pursuant to an official governmental policy or custom. Indeed, his claims are premised his belief that all of these Defendants were operating at the direction of the RICO Defendants. Thus, he fails to allege facts that could support a Section 1983 Claim against Menlo Park.

The Court also concludes that Cobb's attempt to hold the RICO Defendants vicariously liable for the conduct alleged in the Section 1983 Claim, based on principles of *respondeat superior*, fails. First, Cobb fails to allege any *facts* that would show the other named Defendants were the "agents" of the RICO Defendants. Second, the RICO Defendants are private parties, and, in general, private parties do not act under color of state law. *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991). Therefore, a plaintiff must allege facts that tend to show that the private party's conduct has caused a deprivation of federal rights that may be fairly attributable to the State. *Id.* at 708 (holding that "conclusionary allegations of action under color of state law, unsupported by facts, will be rejected as insufficient to state a claim") (quoting *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (internal quotations and brackets omitted).

A two-part test exists to determine whether private-party action causes a deprivation that occurs under color of state law. *Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 937 (1982). First, the deprivation must be caused by the exercise of some right or privilege created by the State; by a rule of conduct imposed by the State; or by a person for whom the State is responsible. *Id.* Second, the party charged with the deprivation must be a state actor. *Id.* A person may become a state actor by performing a public function or being regulated to the point that the conduct in question is practically compelled by the State. *Vincent v. Trend Western Technical Corp.*, 828

12

F.2d 563, 569 (9th Cir. 1987). The Supreme Court also has noted that, if engaged jointly with state officials with respect to a challenged action, private persons are acting under color of law for Section 1983 purposes. *Dennis v. Sparks*, 449 U.S. 24, 28; *see also Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996); *Price*, 939 F.2d at 708. The Court has carefully considered the allegations in the Complaint, and it finds that Cobb does not allege facts that show the RICO Defendants could be considered state actors.

For all of these reasons, the GRANTS the motions to dismiss the fifth claim for relief.

**G.     The Court Dismisses the RICO Claims.**

Under 18 U.S.C. Section 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." It also is "unlawful for any person to conspire to violate any of the provisions of the subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

In order to state a civil RICO claim, Cobb must allege facts showing: "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property'" ("RICO injury"). *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quoting *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir.1996), in turn citing 18 U.S.C. §§ 1964(c), 1962(c)). In order to state a claim for RICO conspiracy, Cobb must allege that a person conspired to violate section 1962(c), that he suffered RICO injury by reason of overt acts, and that those overt acts constitute predicate acts under the RICO statute, which were in furtherance of the conspiracy. *See, e.g, Reddy*, 912 F.2d at 295.

The RICO Defendants argue, *inter alia*, that Cobb fails to allege facts showing RICO injury. They also argue that Cobb fails to allege facts that showing that they engaged in a pattern of racketeering activity, *i.e.* that he fails to allege facts to support the alleged predicate acts. Cobb, in turn, argues that he has alleged RICO injury, because he alleges that he incurred legal fees, bail fees, court ordered restitution fees, probation fees, and "class fees." (*See* Compl.

13

¶¶ 193, 197, 201, 205, 209, 213.)  He also argues that his allegations are sufficient to show the RICO Defendants engaged in the requisite predicate acts.

The Ninth Circuit has not yet recognized incurring legal fees as a form of RICO injury. *See, e.g., Thomas v. Baca*, 308 Fed. Appx. 87, 88 (9th Cir. 2009).  As this Court has previously noted, however, some district courts within the Ninth Circuit have found that expenditure of legal fees may qualify as RICO injury.  *See, e.g., Dunmore v. Dunmore*, 2013 WL 5569979, at *6-*7 (E.D. Cal. Oct. 9, 2013), *report and recommendation adopted*, 2014 WL 466257 (E.D. Cal. Feb. 5, 2014); *Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1035-36 (N.D. Cal. 2004) (citing *Handeen v. Lemaire*, 112 F.3d 1339, 1354 (8th Cir. 1997) and *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1166-67 (2d Cir. 1993)).  In general, in cases where courts have concluded that incurring legal fees is sufficient to allege RICO injury, they have done so when the fees incurred were proximately caused by conduct that would qualify as a RICO predicate act.  *See, e.g., Dunmore*, 2013 WL 5569979, at *7 (but finding link between plaintiff's injury and alleged conduct too remote to confer RICO standing); *Burger,* 325 F. Supp. 2d at 1035 (finding that plaintiff had not adequately alleged RICO injury but finding that amendment would not be futile).

Cobb alleges that the predicate acts that support the RICO and RICO Conspiracy claims include obstruction of justice, in violation of 18 U.S.C. Section 1503, and witness tampering, in violation of 18 U.S.C. Section 1512(b).  (Compl. ¶¶ 187-213.)  For the reasons set forth below the Court concludes that even if incurring legal fees could be sufficient to state RICO injury, Cobb has not alleged facts showing that a predicate act caused him to incur those fees.

Under Section 1503, it is unlawful to "corruptly or by threats or force, or by any threatening letter or communication," to influence, obstruct, or impede, or to endeavor to influence, obstruct, or impede, the due administration of justice[.]"  18 U.S.C. § 1503(a).  Cobb alleges that the RICO Defendants falsely accused him of battery.  (Compl. ¶ 190.)  However, in his prior complaint, he alleged that his ex-wife made the false accusation and filed the allegedly false police report.  Cobb also alleges that the RICO Defendants "succeeded in having ... falsified photographs admitted into evidence specifically to support the planned perjurous [*sic*]

14

testimony." (Compl. ¶ 195.) Although Cobb alleges that his ex-wife, Kassabian, and others engaged in this conduct at the "directives" of the RICO Defendants, his allegations of agency and collusion are conclusions couched as fact. (*See, e.g., id.* ¶¶ 120-121.) Thus, his allegations are insufficient under *Twombly* to show that the RICO Defendants obstructed justice. The allegations of witness tampering suffer from similar flaws, in that Cobb seeks to hold the RICO Defendants vicariously liable for the actions of others. (*See* Compl. ¶¶ 199, 203, 207, 211 (alleging that the RICO Defendants "through agents" engaged in alleged witness tampering).

The Court concludes that Cobb has not alleged facts showing that any of the RICO Defendants engaged in obstruction of justice or witness tampering as predicate acts to support the Civil RICO claim. Because the Court has found that Cobb fails to allege a Civil RICO claim, Cobb's RICO Conspiracy claim fails as well. *See Turner v. Cook*, 362 F.3d 1219, 1231 n.17 (9th Cir. 2004) (quoting 18 U.S.C. § 1962(d)).

Accordingly, the Court GRANTS the RICO Defendants' motion to dismiss the RICO Claims.[8]

**H.     The Court Dismisses the Civil Conspiracy Claim.**

In his eighth claim for relief, Cobb asserts a claim for civil conspiracy against all of the Defendants. Civil conspiracy is not a separate and distinct cause of action under California law. *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.,* 122 F.3d 1211, 1228 (9th Cir. 1997). Instead, civil conspiracy is "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its preparation." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal. 4th 503, 510-11 (1994). Cobb fails to state a claim against any of the Defendants, and his allegations of a conspiracy are no more than legal conclusions couched as fact, which the Court need not accept as true.

Accordingly, the Court GRANTS the motions to dismiss this claim as well.

---

[8]     Kassabian is named as a RICO Defendant. (Compl. ¶ 35.) However, for the reasons set forth above in Section B.3, he also is entitled to absolute immunity on the Civil RICO Claim and RICO Conspiracy Claim. *See, e.g., Van-Beek v. A.G. Credit Bonus Partners*, 316 Fed. Appx. 554, 555 (9th Cir. 2008).

**I.      The Court Grants Cobb Leave to Amend, in Part.**

The Court recognizes that, in general, it should be liberal in granting leave to amend, especially where, as here, a plaintiff is proceeding *pro se*. *See Weilberg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007). However, this is not Cobb's first attempt to state a claim based on the allegations set forth in his Complaint. Cobb's claims are based on many of the same facts that he alleged in *JPMorgan Chase I* and *JPMorgan Chase II*. As noted, the Court previously dismissed his claims in those cases.

The Court concludes that it would not be futile for Cobb to amend his Complaint to try and allege facts that would support a Section 1983 claim against Trask based on his allegations that she lacked probable cause to arrest him. In his opposition brief to the RICO Defendants' motion, Cobb asserts he is African-American. (*See* Docket No. 34, Opp. Br. at 8:1.) The Court has considered that fact in determining whether it should grant Cobb leave to amend the claims that require a showing of discriminatory animus. Based on the allegations in his Complaint, the Court concludes it would be futile to permit him to amend to include this allegations. In his Complaint, and in his previous complaints, Cobb has made clear that the Defendants have acted out of a desire to cover up alleged wrong-doing or out of personal malice toward Cobb. He has not alleged facts that plausibly suggest any of the named Defendants discriminated against him based on his race. Accordingly, for the reasons set forth in this Order and based on Cobb's previous attempts to state claims based on many of these same allegations, the Court concludes that it would be futile to grant Cobb leave to amend his claims against the remaining Defendants.

By no later than June 27, 2014, Cobb may file an amended complaint that shall be limited to a Section 1983 Claim against Trask based on the allegations that she lacked probable cause to arrest him in March 2013. In light of this ruling, the Court CONTINUES the case management conference schedule for June 6, 2014 to August 1, 2014 at 11:00 a.m. in Courtroom 5, 1301 Clay Street, Oakland, California. The parties' case management statements shall be due on July 25, 2014.

16

If Cobb does not file an amended complaint by June 27, 2014, the Court shall presume he intends to stand on the allegations in the original complaint, and the Court shall dismiss this case with prejudice.

**IT IS SO ORDERED.**

Dated: May 28, 2014



JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

17